## EADS v. HOLLIDAY.
### No. 1054.

Court of Appeal of Louisiana. First Circuit.
Dec. 6, 1932.

Woodville & Woodville, of New Orleans, for appellant.

Schwing & Obier, of Plaquemine, and W. M. Barrow, of Baton Rouge, for appellee.

MOUTON, J.

A public road runs southward along a bayou from Gross Tete to the town of Plaquemine. About two miles south of Gross Tete there is a very sharp curve in that road. The east side of the road is called the bayou side, and the west side, the wood side.

Claude Blanchard had parked his auto on the wood or west side of that road and plaintiff, Charles Eads, had also parked a truck on the bayou or east side, not on a direct line however with the Blanchard auto, but further north.

There is a very sharp curve where the Blanchard auto was parked, and from the south to that point there were then underbrush and briars which had the effect of obstructing the vision of travelers on that road driving northward, the direction defendant was driving.

On October 6, 1930, defendant, Holliday, while driving his auto northward from Plaquemine through that curve, ran into plaintiff and severely injured him, which resulted in the damages claimed herein against defendant.

Judgment was rendered rejecting plaintiff's demand, from which he appeals.

As defendant was driving northward, his right of way was on the east or bayou side of the roadway where plaintiff had parked his truck. When defendant reached the curve he blew his horn. Plaintiff was then standing near Blanchard's auto and, upon hearing the horn or the noise made by the on-coming Holliday car, he ran directly across the roadway, stopped at the ditch edging it, then, seeing the car advancing on him, ran about thirty feet along the ditch, dashed from there in attempting to get away from the impending danger and ran up against a wire fence, was struck and injured. If plaintiff had stayed near the Blanchard auto on the opposite side of the road, or had stepped behind it, he would have escaped injury. In crossing the road and going on the bayou side in the pathway of defendant's car plaintiff was at fault. He cannot recover against defendant unless he is entitled thereto under the doctrine of "the last clear chance."

The district judge, in dismissing the suit, did not pass on that feature of the case, upon which we think a correct solution of the contest depends.

Section 5, subdivision (a) Act No. 296 of 1928, pages 628, 632, reads, as follows: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person."

Subdivision (b) reads: "Subject to the provision (a) of this section and except in those instances where a lower speed is specified in this Act, it shall be prima facie lawful for the driver of a vehicle to drive at a speed not exceeding the following, but in any case when such speed would be unsafe it shall not be lawful." Then the act proceeds to specify the number of miles an hour a driver is permitted to drive according to subdivision (b) indicated by the figures 1, 2, 3, 4, et seq., in the statute.

Under figure 4, the act, in referring to the miles per hour the driver is authorized to drive, says: "Fifteen miles an hour in traversing or going around curves or traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding."

In this case the proof does not establish the fact that a driver coming up to the curve would have had his view obstructed "within a distance of one hundred feet" going northward, "the direction in which he [defendant] is proceeding," the last quotation being the words used in figure 4 of the statute. It is however shown that there was considerable obstruction to a driver coming up the way defendant was traveling caused by underbrush and briars along the wood side of the road where Blanchard's car was parked, and also by a pecan tree standing in the curve. It is also shown that defendant was familiar with the conditions which existed there, as he frequently traveled over that highway.

It will be noticed that section 5 of the act, above reproduced, says that the driver must drive his car "at a careful and prudent speed not greater than is reasonable and proper" having due regard to traffic, etc., and "width of the highway" and of any "other conditions then existing."

In subdivision (b) of section 5 of the act, after providing for the rate of speed fixed under figures 1, 2, 3, and 4, et seq., above referred to, the act says: "But in any case when such speed would be unsafe, it shall not be lawful." Hence, more than the fifteen miles an hour speed provided for under figure 4 in "traversing or going around curves," might in some cases contemplated in the act be "unsafe" and therefore not lawful, although the obstruction would not be one hundred feet along the highway.

These various provisions in the statute indicate that all of the regulations in regard to "speed" therein mentioned were intended for the protection of "the life, limb or property of any person" traveling on the public highways.

Defendant says he was going about thirty miles an hour when he saw plaintiff running across the highway from the Blanchard auto parked on the opposite side of the road.

The district judge says: "I think that in view of all of the facts and conditions of this case a speed limit of thirty miles per hour in going into or around the curve was more than prudent."

In that respect we are compelled to differ from our learned brother of the district court. That speed was twice as fast as the one fixed under the statute when traversing or going around a curve when the view of the driver is obstructed within a distance of one hundred feet along the highway. Here, though it was not shown that the driver's view was obstructed within that distance, still it appears, as before stated, that there were serious obstructions to his view along that highway. With these obstructions in a very sharp curve existing there, and to the knowledge of defendant, Holliday, we think that ordinary care required him to go at a lower speed than thirty miles an hour in traversing that curve. The fact is, however, that he must have been going at a much faster speed as appears not from his estimate thereof, but by the narrative he gives of the occurrence, as we will show from his own testimony, and from other facts in connection therewith.

His testimony is that when he first saw plaintiff, that plaintiff was running across the highway, and the proof is that he ran directly and not diagonally across the road from Blanchard's auto.

Defendant says he was about sixty feet from plaintiff when he first saw him running across the road; that he "threw on his brakes" and took the ditch to avoid hitting him. His brakes, he testifies, were effective, as was shown by the skidding of the wheels of his car in the ditch where plaintiff was finally run over. He says that after plaintiff had crossed, he ran up the road; also that his car ran about thirty-five feet in the ditch from where it had entered to the spot where he struck plaintiff. It was then that the car came to a stop, as the record clearly shows.

Plaintiff, Eads, testifies that after he had crossed the road he stood on the edge of the ditch, saw defendant's car coming on him, and that he ran about thirty-five feet ahead of the car, when he made an effort to run into the briars along the bayou side of the road, but ran up against a wire fence, was unable to escape, was struck, fell under the car, from where he was extricated.

If defendant was sixty feet from plaintiff when he saw him running across the road, as testified to by him, in order that the distance may be fixed between the time defendant first saw plaintiff, and when the accident occurred, it is important to note the testimony of defendant and plaintiff in reference to that subject.

It will be observed that when defendant first saw plaintiff he was then running across the road and to note the proof which clearly shows that he ran directly across and stood on the edge of the ditch on the bayou side before running away from defendant's on-coming auto. Defendant says he was sixty feet from plaintiff when he saw him running across the road. The proof shows he ran directly across and stopped on the edge of the ditch. As plaintiff stopped in a direct line, he was then at about sixty feet from defendant, as he ran not quite twenty-one feet which was the width of the road. It is clearly shown that plaintiff ran thirty or thirty-five feet from where he had stopped before he was overtaken by defendant's auto. These thirty or thirty-five feet must be added to the sixty feet when plaintiff was first seen by defendant in computing the distance intervening between the time plaintiff was first seen and when injured, which makes it about ninety or ninety-five feet. In connection therewith, it must be borne in mind that defendant says he immediately applied his brakes upon seeing plaintiff running across the road, and that the brakes were effective, as was evidenced by the marks of the wheels of his auto in the ditch.

Is it possible to believe that a driver applying his brakes on a highway, whether a dirt or graveled road, would not bring his car to a stop before running a distance of ninety or ninety-five feet, or even seventy-five or eighty feet, if traveling at thirty miles an hour? The fact is that defendant says that he first saw Blanchard's car when he was about eighty feet from it, and Eads, when he was sixty feet. He testifies that he "threw on his brakes" when he first saw the Blanchard car, which was then eighty feet away, as stated by him. If he applied his brakes then and again applied them when he saw plaintiff, he in reality ran over one-hundred feet from the time he first applied his brakes to the time of the accident that occurred after he had run behind plaintiff some thirty-five feet in the ditch. Indeed, it is simply impossible to believe that, if defendant had been running through that curve at the rate he claims he was, his car would not have come to a stop a good distance before it collided with plaintiff. The question, upon this state of facts, arises as to whether defendant exercised the ordinary care required under the existing circumstances.

The rule governing "the last clear chance" doctrine is stated to be as follows in the case of Tyer v. Gulf, C. & S. F. Ry. Co., 143 La. 178, 78 So. 438: "In order to enforce the humanitarian doctrine of 'the last clear chance,' it must appear that plaintiff has clearly shown that defendant, after seeing the danger, could by the exercise of ordinary care have avoided the injury, or if defendant did not see the danger, it must appear that plain-

tiff has clearly shown that defendant might by the exercise of ordinary care have seen the danger in time to avoid the injury."

If defendant was going at thirty miles an hour and had applied his brakes, as claimed by him, he would have unquestionably stopped his car in time to avert the accident. The only conclusion possible under the circumstances appearing in this case is that he failed to apply his brakes in time, taking it that he was traveling at the speed to which he testifies. He did not, therefore, exercise the ordinary care required of him, according to the first part of the humanitarian rule of "the last clear chance" above reproduced. If the first part of the rule does not apply, the second, we think, covers the case. We say this because we are convinced that defendant was traveling at a speed far in excess of thirty miles an hour while going across that curve. It appears from the facts to which we have referred that his driving was at an inexcusable rate of speed considering the "existing conditions" around and in that curve. Hence, it appears that he was not exercising ordinary care. If he had been driving at a "reasonable and proper speed," he would have been exercising ordinary care and, we have no doubt, would have seen plaintiff in ample time to stop his car before running about ninety feet from the time he first saw him to the time of the collision.

This lack of ordinary care, above referred to, brings the case within the purview of the second part of that rule which says, when defendant "might by the exercise of ordinary care have seen the danger in time to avoid the injury." It was the fast driving of the defendant and the total absence of ordinary care on his part which caused the accident.

There can be no doubt that the purpose of the lawmaker in fixing the speed limit at fifteen miles an hour when the driver of an auto is traversing a curve was intended that he should exercise ordinary care so that the general purpose of the statute not to endanger "the life, limb or property of any person" using the public highways might be carried out.

It is true that defendant, Holliday, says, he applied his brakes immediately after seeing plaintiff and took the ditch in his effort to avert the accident. If he had been driving at a "reasonable and proper speed," under the conditions then existing, and therefore with ordinary care, his application of the brakes would be a good defense to sustain his plea for exoneration, as against the rule of "the last clear chance," upon which this opinion is grounded. If such a plea were available

when the driver is going at a speed inexcusably fast under the existing circumstances, the rule of the "last clear chance" would have, for all practical purposes, to be discarded, as a driver, though driving at a rate say of sixty or seventy miles an hour through a very sharp curve, could say in his defense of non-liability that as soon as he saw the plaintiff he applied his brakes and did all in his power to avoid the collision, but without avail. See Norwood v. Bahm, 14 La. App. 261, 129 So. 183.

The rule of "the last clear chance" would be of no value if such a defense was considered as reasonable, logical or legal. In this case, after plaintiff had crossed the highway and was standing on the edge of the ditch, upon seeing the defendant's car moving on him, he started up ran about thirty-five feet to save himself from death or injury, was not at fault when overtaken by defendant who, if he had "exercised ordinary care," could have seen the danger in time to have avoided the injury, and is therefore responsible in damages under the rule above quoted which is invoked by appellant in a supplemental brief.

### Quantum.

Plaintiff was run over by defendant's car and was pulled from under with difficulty. His hand was cut from which blood was dripping; the tremendous weight of the car pressed heavily against his arm and for a while he was badly strangled. When those around were pulling him from under the car, he said: "Gentlemen, you have not killed me yet but if you start your car you will finish me." Such an exclamation indicates the suffering he was undergoing at that time.

Doctor Barker treated plaintiff from October to January for a period of about three months. He was employed in delivering ice and bread and suffered, as a result of the injury, an "affection" in his leg, used crutches for several months, and during that time was unable to attend to his work.

We think that an allowance of $1,000, is just and fair.

The judgment will be reversed, and a decree for that amount with legal interest will be entered in favor of plaintiff.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and reversed, and that plaintiff recover judgment against defendant in the sum of $1,000, with interest at the rate of 5 per cent. per annum from judicial demand until paid, and that defendant pay all the costs of this suit.